02-10-452-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT
 OF APPEALS
 SECOND
 DISTRICT OF TEXAS
 FORT
 WORTH
  
 
 


 

 

NO. 02-10-00452-CR

 

 


 
 
 MICHAEL RAY BROWN
 
 
  
 
 
 APPELLANT
 
 


                                                                                                                             

V.

 


 
 
 THE
 STATE OF TEXAS
 
 
  
 
 
 STATE
 
 


 

 

------------

 

FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY

 

------------

 

MEMORANDUM OPINION[1]

 

------------

I.  Introduction

In three issues, Appellant Michael
Ray Brown appeals his conviction for two counts of indecency with a child.  We
affirm.

II.  Factual and Procedural History

The complainant, M.W., made a sexual
abuse outcry about Brown to her school counselor when she was in the ninth
grade.[2] 
The school counselor told M.W.’s parents about the outcry.  M.W.’s father,
R.W., called the Arlington police and then he pretended to be M.W. and sent
Brown sexually explicit text messages from his cell phone.  R.W. sent his
messages and Brown’s responses from his phone to his e-mail, printed them out,
and brought them to Arlington Police Detective Garth Savage, who was
investigating the offense.[3]

Detective Savage wanted to confirm
that Brown was the one sending the text messages.  He and R.W. arranged for
Brown to meet R.W. (sending texts as M.W.) at M.W.’s school at 11:30 a.m. on
March 24, 2008.  R.W. also printed out Brown’s text responses from the day of
the meeting, and Detective Savage was present when R.W. received these messages
on March 24 from Brown.

When Brown arrived at M.W.’s school,
Detective Savage spoke with him about the text messages and took his phones,
and Brown gave a written statement on a form preprinted with Miranda
warnings[4]
and signed consent-to-search forms, which also had his rights preprinted on
them, for the phones.  Brown left after giving his statement.

Brown gave another written statement
to the police on April 21, 2008.  Detective Savage said that Brown was not in
custody when he gave this statement and that Brown left after giving the
statement.  After Brown left, Detective Savage obtained a warrant for Brown’s
arrest.  Detective Savage taped his March 24 and April 21 conversations with
Brown; Brown did not know that he was being taped.

The State charged Brown with one
count of sexual assault (digital penetration of M.W.’s female sexual organ) and
two counts of indecency with a child (touching M.W.’s breasts and causing M.W.
to touch Brown’s penis), occurring on or about June 1, 2007.

Brown filed two motions to suppress. 
The first motion sought to suppress any of Brown’s statements, and the second
sought to suppress the text messages.  The trial court denied both motions.

At trial, M.W. claimed that Brown
began touching her “private areas” when she was five years old and that the sexual
abuse continued until March 2008, when M.W.’s teacher asked her about her
repeated absences from class.  M.W. said her absences occurred because Brown
would pick her up from school during lunch and take her back to his apartment, where
he would touch her breasts, have her touch his penis, and move his finger
around inside her female sexual organ.[5]
 Brown had bought a cell phone for M.W., and they would text each other
throughout the day.  R.W. stated that he was very upset when he found out about
the sexual abuse, especially since Brown had been a grandfather figure to M.W.

The trial court overruled Brown’s
objections to his March 24 statement and admitted it as State’s Exhibit 3.  In
the March 24 statement, Brown gave his age as fifty-two and stated that he had
completed twelve years of formal education and could read, write, and
understand the English language.  Detective Savage read the following into
evidence from Brown’s statement:

I have never picked up [M.W.] from Timberview High
School.  I have not had sex with [M.W.] and am certain that all claims she is
making [are] false.  I do acknowledge having given [M.W.] money on various
occasion[s] upon her request.  I do acknowledge that I have brought [M.W.]
lunch to school on numerous occasions.  I have on many occasions talked about
abstaining from actual sexual contact to avoid pregnancy.  I have acknowledge[d]
that I have had conversations with [M.W.] of a sexual nature.  I even saved
several texts (which may have been someone other than [M.W.] sending them) that
were very explicit in nature that really shocked me that she would say such
things.  But in reality it may have been the police sending the text[s].  I
realize that even the conversations were wrong.  I have never been with [M.W.]
sexually no where [sic].  The money and lunch were always her asking and I
tried to accommodate her in order to keep a positive relationship with
frie[n]ds.  She is a very friendly girl, but she knows how to pretend and act
in order to achieve her goals.  I realize that the things [M.W.] accuses me of
are truly false and with [sic] documentation and substance.  Even today, she
had asked me to bring pizza and I was confronted by police.  Apparently, I was
being led on thinking it was [M.W.]

The school secretary can acknowledge
that on many occasions I have brought lunch to [M.W.] per her request.

The trial court also admitted Brown’s
April 21 statement as State’s Exhibit 4-A after overruling Brown’s objections,
and Detective Savage read the following portion into evidence:

I hereby admit to kissing and
touching [M.W.] when we were alone at a park in Arlington.  She would touch my
penis and I would touch her clitoris.  I also touched her breast.  This
happened on two occasions during the summer of 2007.  These incidents happened
during the day in my vehicle.  These were the only times I had sexual contact
with her.  I never actually put my penis into her vagina.  The touching was
under her clothes.  She nor I never fully undressed.  I realize the error of my
ways and am taking full responsibility.  I would desire to seek therapy or
counseling in this matter.

The trial court admitted State’s
Exhibit 8, which contained audiotape recordings of Brown’s March 24 and April
21 conversations with Detective Savage.

The jury found Brown not guilty of
the sexual assault charge, and the trial court entered a judgment of acquittal
on that offense.  The jury convicted Brown of both counts of indecency with a
child and assessed punishment at fifteen years’ confinement and a $5,000 fine
for each count, and the trial court entered judgment on the verdicts, setting
Brown’s sentences to run concurrently.  This appeal followed.

III.  Motion to Suppress

In his first issue, Brown argues that
the trial court abused its discretion by denying his motion to suppress his
statements.  Specifically, he complains that the instant Detective Savage
seized his phone, an arrest was made and that all actions and statements that
followed the stop and seizure should have been suppressed.  Further, Brown
claims that he was induced and threatened by a polygraph examiner to divulge
his guilt, making his confession invalid.

A.  Preservation of Error

To preserve a complaint for our
review, a party must have presented to the trial court a timely request,
objection, or motion that states the specific grounds for the desired ruling if
they are not apparent from the context of the request, objection, or motion. 
Tex. R. App. P. 33.1(a)(1); Lovill v. State, 319 S.W.3d 687, 691–92
(Tex. Crim. App. 2009).  Further, the trial court must have ruled on the
request, objection, or motion, either expressly or implicitly, or the
complaining party must have objected to the trial court’s refusal to rule. 
Tex. R. App. P. 33.1(a)(2); Mendez v. State, 138 S.W.3d 334, 341 (Tex.
Crim. App. 2004).  A reviewing court should not address the merits of an issue
that has not been preserved for appeal.  Wilson v. State, 311 S.W.3d
452, 473 (Tex. Crim. App. 2010) (op. on reh’g).  Preservation of error is a
systemic requirement that this court should review on its own motion.  Id.
at 473–74; Ford v. State, 305 S.W.3d 530, 532–33 (Tex. Crim. App. 2009).

In his “Motion to Suppress
Statements,” Brown argued that “[a]t the time of any conversations between
[Brown] and law enforcement officers, [Brown] was (a) under arrest or (b)
substantially deprived of freedom by the conduct of the law enforcement
officers and the circumstances surrounding the arrest or deprivation of
freedom.”  He alleged that any statements made by him were involuntary and were
coerced and enticed from him; that he was deprived of the right to counsel and
did not make an intelligent and knowing waiver of that right; and that his
statements “were tainted by the illegal and unlawful detention and arrest, in
violation of [his] constitutional rights under the Fifth and Fourteenth
Amendments to the Constitution of the United States, Article I, Section 9 of
the Texas Constitution and Article 38.23 of the Texas Code of Criminal
Procedure.”  Further, he argued that the statements were taken “without the
safeguards required by and in violation of Article 38.22 of the Code of
Criminal Procedure” and that the admission of his statements would violate his
rights under the “Fourth, Fifth, Sixth, and Fourteenth Amendments to the United
States Constitution, Article I, Section[s] 9 and 10 of the Texas Constitution
and Articles 1.05 and 38.23 of the Texas Code of Criminal Procedure.”  Nothing
in the motion indicates at what point Brown was taken into custody or provides
any factual basis to conclude that he was taken into custody.

At the suppression hearing, Brown’s
cross-examination of Detective Savage focused on the text messages printed out
by R.W. and the polygraph examination.  His arguments the following day, after
the trial court reviewed the March 24 and April 21 audiotaped conversations
between Brown and Detective Savage, focused again on the text messages and on
enticement or coercion by the polygrapher as an agent of the Arlington police
department.  Brown did not argue that he was taken into custody when Detective
Savage took his cell phone.

During trial, Brown objected to the
admission of his written statements, citing code of criminal procedure articles
38.22 and 38.23 and Sossamon v. State, 816 S.W.2d 340 (Tex. Crim. App.
1991), abrogated on other grounds by Graham v. State, 994 S.W.2d 651,
655–56 (Tex. Crim. App.), cert. denied, 528 U.S. 974 (1999).[6] 
He did not argue that he was arrested when Detective Savage took his cell
phone.

For the first time on appeal, Brown
argues that he was arrested when Detective Savage detained him and took his
cell phone on March 24.[7]
 Brown’s situation is similar to that of the appellant in Swain v. State,
181 S.W.3d 359, 365 (Tex. Crim. App. 2005).  In Swain, the appellant
argued for the first time on appeal that his oral statement to a police
detective and an investigator from the district attorney’s office and his third
written statement were obtained in violation of his right to counsel under the federal
and state constitutions because he was questioned after he had appeared before
a magistrate and had requested the appointment of counsel, rendering the
statements inadmissible under article 38.23 of the code of criminal procedure. 
Id. at 363, 365.  In his written motion, however, the appellant merely argued
that “any statements made by Defendant were obtained in violation of his right
to counsel and his right against self-incrimination as guaranteed by U.S.
Const. amends. V, VI, and XIV, and Tex. Const. art. I, §§ 10 and 19,”
and argued generally that the statements were inadmissible under article
38.23.  Id. at 365.

The court of criminal appeals held
that because the arguments in the appellant’s motion were “global in nature and
contained little more than citations to constitutional and statutory
provisions,” and because at the suppression hearing, the appellant failed to
complain about being questioned after asserting his right to counsel and
“instead simply objected that his statements were inadmissible because the
police illegally arrested him and failed to comply with the requirements of
Articles 38.22, 14.03, and 14.06,” the appellant had failed to preserve the
arguments that he had tried to make on appeal.  Id. (citing Tex. R. App.
P. 33.1).

Like Swain, here, Brown made
global arguments in his written motion to suppress.  At the suppression
hearing, he focused on the admissibility of the text messages under his other
motion and on the actions of the polygrapher on April 21 with regard to
coercion and enticement, not the actions of Detective Savage on March 24 in
taking Brown’s cell phone.  And although the trial court made findings of fact
and conclusions of law on the record at the conclusion of the suppression
hearing, the findings and conclusions did not address the seizure of the cell
phone, other than to find that Brown was not in custody on March 24.  Brown did
not argue at trial that Detective Savage arrested him on March 24 when he took
Brown’s cell phone from him.  Therefore, Brown has failed to preserve this
argument for our review.  See Tex. R. App. P. 33.1; Swain, 181
S.W.3d at 365.  We overrule the first portion of Brown’s first issue.

B.  Suppression

We review a trial court’s ruling on a
motion to suppress evidence under a bifurcated standard of review.  Amador
v. State, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); Guzman v. State,
955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  The trial judge is the sole trier of
fact and judge of the credibility of the witnesses and the weight to be given
their testimony.  Wiede v. State, 214 S.W.3d 17, 24–25 (Tex. Crim. App.
2007); State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), modified
on other grounds by State v. Cullen, 195 S.W.3d 696 (Tex. Crim. App.
2006).  When, as here, the trial court makes explicit fact findings, we
determine whether the evidence, when viewed in the light most favorable to the
trial court’s ruling, supports those fact findings.  State v. Kelly,
204 S.W.3d 808, 818–19 (Tex. Crim. App. 2006).  We then review the trial
court’s legal ruling de novo unless its explicit fact findings that are
supported by the record are also dispositive of the legal ruling.  Id.
at 818.

1.  Trial Court’s Findings of Fact
and Conclusions of Law

The trial court read the following pertinent
findings of fact and conclusions of law into the record:

Detective Savage began his
investigation of the case.  The father of the alleging party sent text messages
pretending to be the injured party.  The defendant responded to those text
messages.  The defendant agreed to meet at the school.  Officers approached the
defendant at the school where the defendant was thinking he was there to pick
up the child.[[8]]

Defendant was told of the
allegation.  Defendant signed a statement that contained Miranda warnings.  Defendant
was not in custody.  Defendant had not been deprived in any significant manner
away [sic] of his freedom [of] movement.  Defendant made a—signed a statement
in which he denied hav[ing] any sexual relationship with the injured party.  He
admitted, however, to talking with her about sex.

Defendant agreed to take a
polygraph examination.  A polygraph was taken several weeks after the initial
contact.  The defendant was permitted to go voluntarily to the polygraph site. 
He was not deprived of his freedom of movement at the polygraph exam location. 
He was not in custody.  He was not under arrest.  The defendant met voluntarily
with Mr. Jones of Wood’s Polygraph Service.  He took the polygraph test and was
told that he did not pass the test and that he should come clean.

At the time, Wood’s Polygraph
was an independent contractor—or rather, in an independent contractual
relationship with the Arlington P.D.  However, detectives—I’m sorry, Mr.
Jones—you have no evidence that Mr. Jones made the statement to the defendant
that he should come clean at the urging of the Arlington Police Officer Savage
or any other member of the Arlington Police Department.

No testimony that Mr. Jones
was acting as an agent of the Arlington Police Department at the time he made
such statement.  And, again, the defendant was not in custody.  He was not
deprived of his freedom in any manner.

The defendant’s second
statement was freely and voluntarily made.  In the statement, the defendant
expressed hope that he would get treatment.  In his voluntary statements to the
police, he was expressing the hope of getting probation.  Mr. Jones related to
the defendant that he had known of cases where people had gotten probation for
similar crimes.  However, Mr. Jones did not promise the defendant he would get
probation.

And, again, the defendant was
never told he was under arrest, and his freedom of movement was never limited
or restricted in any manner.  In fact, he was expressly told that he was free
to leave on each occasion.[[9]]


For these reasons, and for all
these reasons, the Court denies your motion to suppress and rules that you have
not met—you have not shown a violation of Article 38.22 nor Miranda.

After voir dire and before opening
statements, the trial court added the following:

My previous ruling pertained
to the audio statements as well as the written statements.  And for the reason
I gave in my findings of the fact [sic] this morning, that applies to the
audio.  The audio will be permitted to be introduced.  However, I am going to
instruct the State to redact any portion of the audio that concerns the
polygraph examination.  That would be inadmissible.

2.  Additional Suppression Hearing Evidence

Detective Savage testified that he had
arranged for Brown to take a polygraph exam on April 21 with Wood’s Polygraph,
a company that the Arlington Police Department used on a regular basis.  He
said that he did not observe the polygraph exam but that after Bobby Jones, the
polygrapher, told him the results, he told Jones that he would like to talk to
Brown.  Detective Savage and Brown then talked in the polygraph company’s
conference room, and he recorded their conversation.  Detective Savage did not
recall Brown’s trying to talk with him about what Brown and Jones had discussed.[10]

Brown agreed to give Detective Savage
another statement.  Brown gave his second statement on another form with
pre-printed Miranda warnings, and Detective Savage asked him to read the
warnings to himself and indicate whether he understood them.  Brown indicated
that he understood them by initialing next to them.  Detective Savage said that
he had made it clear to Brown that getting Brown help and probation were out of
his hands and that he did not promise Brown anything for his statement.  Their
discussion about bond issues occurred after Brown gave his statement.  Detective
Savage obtained an arrest warrant for Brown on May 20, 2008.

Jones, the polygrapher from Wood
& Associates Polygraph Services, testified that his company was an
independent contractor and had a contract with the Arlington Police Department.
 Jones said that at the end of the test, he told Brown that he had failed and
suggested to him that he “come clean.”  The following dialogue then occurred
between Jones and defense counsel:

Q.  And you suggested to him that he come clean?

 

A.  Yes, ma’am.

 

Q.  And in the process of that, you-all talked about
that if he would go ahead and come clean, you gave him examples of people who
got better situations, probation, help, counseling for just going ahead and
telling the truth?

 

A.  We discussed that, yes, ma’am.

 

Q.  You not only discussed it, sir, but it came from
you, these scenarios and these examples, that you knew of personally where some
people regretted not coming clean versus others who had a slightly better deal
from coming clean?

 

A.  No, ma’am.  The context I put it in—he was
obviously very guilt-ridden.  I talked to him about many people I see in this
situation get probation.  And that’s the truth, that I couldn’t promise him
anything at all.  I wasn’t in a position to do that, but he was carrying a big
burden on his shoulders that he had to get off his shoulders.  And I gave him
the example that people who are open and honest get that burden off their
shoulders, that if he makes it hard on other people, they make it hard on him
in return.  That’s a human trait that we all have.  I talked to him in those
regards.

Jones also said that in conducting
his interview with Brown, he never promised Brown anything and told Brown that
he could not promise him anything and that he did not make any promises or
inducements to obtain Brown’s statement.  Jones testified that Brown was free
to leave and to terminate the interview at any time, that Brown knew this, and
that Brown never terminated the interview.  Jones stated that he was not a
member of the Arlington Police Department and that he did not take a written
statement or record Brown’s statement.

The trial court reviewed the
audiotape containing Detective Savage and Brown’s March 24 and April 21
conversations prior to issuing its ruling, and these conversations were
subsequently played for the jury.

The April 21 recording reflects that Detective
Savage told Brown that he was not under arrest, that he was not going to arrest
Brown that day, and that Brown was going to leave just like he came.  He
acknowledged that Brown had been very cooperative.  Brown told Detective Savage
that he and M.W. had two encounters in a park in Arlington, where he touched
M.W.’s breast and female sexual organ with his hand on two occasions and M.W.
touched his penis on one occasion.

Brown said that he admitted his
“wrong” and that he needed to accept responsibility and “to get some help about
that.”  Detective Savage told Brown, “We can do that, you’re doing the right
thing, you know, being honest.”  Brown then said,

And I appreciate the way
you’ve been helping me.  You know, I really do, you know, you been honest with
me, you know, you been gentle, more or less, you know, and I really appreciate
it.  That’s why, even in the beginning, when you confronted me, I didn’t try to
just deny everything.

Brown then told Detective Savage his
hope that he could admit “to this,” put in a guilty plea, and get probation.

Detective Savage told Brown that
those decisions were up to the district attorney and the court, Brown
acknowledged that he knew this, and then the detective asked Brown to give him a
written statement of what they had just talked about.  Detective Savage showed
Brown the top part of the form that set out his Miranda rights, asked
him to read through them, and told him that if he had any questions at all,
just to ask.  While Brown wrote out his statement, Detective Savage told him that
if he wanted to ask for counseling, to put that in the statement.

Detective Savage asked Brown whether he
had any questions.  Brown asked him what would happen next, and Detective
Savage told him that he would present the case to the district attorney, that
there would probably be an arrest warrant issued for Brown’s arrest, and that
Brown would have to go through “the process” and make bail.  Detective Savage
told Brown that when he had the warrant signed by the judge, he would tell the
judge that Brown had been cooperative, so the judge could take that into
consideration when issuing his bond.  He explained to Brown what a bond was.[11]

3.  Analysis

In the second part of his first
issue, Brown claims that he made his confession due to threats and a false
promise of leniency by the polygrapher.

A statement may be used in evidence
against an accused if it appears that the statement was “freely and voluntarily
made without compulsion or persuasion.”  Tex. Code Crim. Proc. Ann. art. 38.21
(West 2005).  For a promise to render a confession invalid, it must be
positive, made or sanctioned by someone in authority, and of such an
influential nature that it would cause a defendant to speak untruthfully.  Martinez
v. State, 127 S.W.3d 792, 794 (Tex. Crim. App. 2004).  “Before a promise
will render a confession inadmissible, it must be shown that the promise
induced the confession.”  Muniz v. State, 851 S.W.2d 238, 254 (Tex.
Crim. App.) (noting that general statements made to a suspect that a confession
may sometimes result in leniency do not render a confession involuntary because
this is a statement of fact, not a promise in exchange for a confession), cert.
denied, 510 U.S. 837 (1993).  Further, a confession given “under the duress
of hallucinations, illness, medications, or even a private threat” can be
involuntary under articles 38.21 and 38.22, and the inquiries do not turn
solely on police overreaching.  Oursbourn v. State, 259 S.W.3d 159, 172
(Tex. Crim. App. 2008).

The record supports the trial court’s
findings that Jones was not an employee or agent of the Arlington Police Department
and that Jones did not make his statement that Brown should “come clean” at the
police department’s urging.  Further, there is no evidence that Jones or
Detective Savage threatened Brown or promised Brown anything for his confession
or that Brown felt threatened and made his confession in response to threats or
promises.  To the contrary, Brown even thanked Detective Savage for being
“gentle” with him.  Therefore, we overrule the remainder of Brown’s first
issue.

IV.  Sufficiency

In his second issue, Brown complains
that the State failed to prove that M.W. was not his spouse.

A.  Standard of Review

In our due-process review of the
sufficiency of the evidence to support a conviction, we view all of the
evidence in the light most favorable to the verdict to determine whether any
rational trier of fact could have found the essential elements of the crime beyond
a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct.
2781, 2789 (1979); Isassi v. State, 330 S.W.3d 633, 638 (Tex. Crim. App.
2010).  This standard gives full play to the responsibility of the trier of
fact to resolve conflicts in the testimony, to weigh the evidence, and to draw
reasonable inferences from basic facts to ultimate facts.  Jackson, 443
U.S. at 319, 99 S. Ct. at 2789; Isassi, 330 S.W.3d at 638.  The
standard of review is the same for direct and circumstantial evidence cases;
circumstantial evidence is as probative as direct evidence in establishing the
guilt of an actor.  Isassi, 330 S.W.3d at 638; Hooper v. State,
214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

B.  Analysis

At the time of the offense, to prove
indecency with a child, the State had to show that the accused engaged in
sexual contact with a child or caused a child to engage in sexual contact, that
the child was younger than seventeen years, and that the child was not the
accused’s spouse.  See Act of May 23, 2001, 77th Leg., R.S., ch. 739, §
2, 2001 Tex. Gen Laws 1463, 1463 (amended 2009) (current version at Tex. Penal
Code Ann. § 21.11 (West 2011)).  A “spouse” is a person to whom a person is
legally married under the family code.  Tex. Penal Code Ann. § 21.01(4)
(West 2011).  Direct evidence that the complainant was not the defendant’s
spouse is not required.  Strahan v. State, 306 S.W.3d 342, 348 (Tex.
App.—Fort Worth 2010, pet. ref’d) (stating that it may be proved by
circumstantial evidence that the victim was not the defendant’s spouse).

Here, M.W. testified that she was five
years old when Brown began babysitting her and touching her in her “private
areas.”  R.W. said that Brown had been dating and living with M.W.’s
grandmother L.L. as L.L.’s boyfriend and that Brown was a grandfather figure to
M.W.  At the beginning of her seventh grade year, M.W. moved to Arlington,
Texas, and Brown followed.  M.W. said that Brown moved with L.L. into the same
apartment complex where M.W. lived.

Although Brown denied that he and
M.W.’s grandmother had ever been lovers during the April 21 conversation with
Detective Savage, the evidence also revealed that L.L. had broken up with Brown
after M.W.’s parents took M.W.’s cell phone, found a compromising text from
Brown, and confronted M.W. about it.  On the March 24 audiotape, Brown clearly stated
to Detective Savage that he was not M.W.’s “boyfriend” but said that they had a
close relationship and that he had raised her.  See id. (holding
circumstantial evidence was sufficient to establish that complainant was not
the defendant’s spouse when she was approximately ten years old when the sexual
abuse began and referred to the defendant as her father); Martin v. State,
819 S.W.2d 552, 556 (Tex. App.—San Antonio 1991, no pet.) (holding
circumstantial evidence was sufficient to establish that complainant was not
the defendant’s spouse when the complainant was between the ages of six and
nine when the offense took place); Meyers v. State, 737 S.W.2d 6, 8
(Tex. App.—Corpus Christi 1987, no pet.) (holding circumstantial evidence was sufficient
to establish that complainant was not the defendant’s spouse when he had asked
the victim’s mother to marry him, had two children with the victim’s mother,
and was considered by the victim’s relatives to be the victim’s stepfather); see
also Salinas v. State, No. 13-99-00226-CR, 2000 WL 34252060, at *2
(Tex. App.—Corpus Christi 2000, no pet.) (not designated for publication)
(stating that the circumstantial evidence was sufficient to make it legally impossible
for complainant to be the defendant’s spouse when the evidence established that
she was five years old when the sexual assault occurred and the defendant
testified that he was her father).  Viewing the evidence in the light most
favorable to the jury’s verdict, we conclude that the evidence is sufficient to
support the jury’s finding that M.W. was not Brown’s spouse, and we overrule
his second issue.

V.  Ineffective Assistance of Counsel

In his third issue, Brown contends
that he received ineffective assistance of counsel because his counsel (1)
waited until five days before trial to file her “boilerplate discovery motions”
that made no request for evidence of extraneous offenses that might be
introduced by the State during the guilt-innocence or punishment phases of
trial,[12]
(2) failed to file a motion in limine to bar the State from having M.W. testify
about those offenses, (3) failed to object to the extraneous offenses when they
came in, and (4) failed to suppress the seizure of his cell phone.

A.  Standard of Review

To establish ineffective assistance
of counsel, the appellant must show by a preponderance of the evidence that his
counsel’s representation fell below the standard of prevailing professional
norms and that there is a reasonable probability that, but for counsel’s
deficiency, the result of the trial would have been different.  Strickland
v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Davis v.
State, 278 S.W.3d 346, 352 (Tex. Crim. App. 2009).

In evaluating the effectiveness of
counsel under the first prong, we look to the totality of the representation
and the particular circumstances of each case.  Thompson v. State, 9
S.W.3d 808, 813 (Tex. Crim. App. 1999).  The issue is whether counsel’s
assistance was reasonable under all the circumstances and prevailing
professional norms at the time of the alleged error.  See Strickland,
466 U.S. at 688–89, 104 S. Ct. at 2065.  Review of counsel’s representation is
highly deferential, and the reviewing court indulges a strong presumption that
counsel’s conduct fell within a wide range of reasonable representation.  Salinas
v. State, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); Mallett v. State,
65 S.W.3d 59, 63 (Tex. Crim. App. 2001).  A reviewing court will rarely be in a
position on direct appeal to fairly evaluate the merits of an ineffective
assistance claim.  Salinas, 163 S.W.3d at 740; Thompson, 9 S.W.3d
at 813–14.  “In the majority of cases, the record on direct appeal is
undeveloped and cannot adequately reflect the motives behind trial counsel’s
actions.”  Salinas, 163 S.W.3d at 740 (quoting Mallett, 65 S.W.3d
at 63).  To overcome the presumption of reasonable professional assistance,
“any allegation of ineffectiveness must be firmly founded in the record, and
the record must affirmatively demonstrate the alleged ineffectiveness.”  Id.
(quoting Thompson, 9 S.W.3d at 813).  It is not appropriate for an
appellate court to simply infer ineffective assistance based upon unclear
portions of the record.  Mata v. State, 226 S.W.3d 425, 432 (Tex. Crim.
App. 2007).

The second prong of Strickland
requires a showing that counsel’s errors were so serious that they deprived the
defendant of a fair trial, i.e., a trial with a reliable result.  Strickland,
466 U.S. at 687, 104 S. Ct. at 2064.  In other words, appellant must show
there is a reasonable probability that, but for counsel’s unprofessional
errors, the result of the proceeding would have been different.  Id. at
694, 104 S. Ct. at 2068.  A reasonable probability is a probability sufficient
to undermine confidence in the outcome.  Id.  The ultimate focus of our
inquiry must be on the fundamental fairness of the proceeding in which the
result is being challenged.  Id. at 697, 104 S. Ct. at 2070.

B.  Analysis

Under section 2 of article 38.37 of
the code of criminal procedure, evidence of other crimes, wrongs, or acts
committed by the defendant against the child who is the victim of an alleged
sexual offense shall be admitted for its bearing on relevant matters, including
the state of mind of the defendant and child and the previous and subsequent
relationship between the defendant and child.  Tex. Code Crim. Proc. Ann. art.
38.37, § 2 (West 2005 & Supp. 2011).  Under section 3 of the same article,
on timely request by the defendant, the State shall give notice of its intent
to introduce this evidence in its case-in-chief.  Id. art. 38.37, § 3.

As argued by Brown, his trial counsel
filed her motion for discovery on October 5, 2010, the day trial began.  Brown
complains, “It is difficult to ascertain why trial counsel would not have
requested ‘extraneous offenses’ in her discovery and filed the requisite motion
in limine.”[13]
 However, at the conclusion of the suppression hearing, Brown’s counsel put the
following on the record:

[Defense counsel]:  Okay.  Also, I explained to you
some time ago that one of the blessings we have in practicing in Tarrant
County, is we have what is called an open-file policy.  And I explained to you
that I’m able to get the police report, I’m able to get any information that
the district attorneys have and don’t automatically have to file a motion to
get that like some other counties.

 

Remember, I told you I have everything?  In fact, we
talked in my office with me having those materials, going over that information
with you on more than one occasion.

 

[Brown]:  Yes, ma’am.

 

[Defense counsel]: Now, on today, though, I wanted to
be cautious, and I did file a motion for discovery, which basically asked them
for everything I already have; do you understand that?

 

[Brown]:  Yes, ma’am.

 

[Defense counsel]:  The only thing that I needed from
the State, which they provided that to me, was the witnesses.  And they went
even further by telling me which ones they anticipate specifically to call
today; do you understand that?

 

[Brown]:  Yes, ma’am.

 

[Defense counsel]:  They could have given me a list of
ten or twelve people, but they basically gave me the three or four they may
call; do you understand?

 

[Brown]:  Yes, ma’am.  [Emphasis
added.]

Although Brown speculates that his
trial counsel was unaware of the extraneous offenses—specifically M.W.’s
testimony that Brown had been touching her sexually since she was five years
old—and argues that trial counsel’s failure to file the motion was “an
inexplicable abdication of her duty to thoroughly investigate the case,” we
cannot say that the record here affirmatively demonstrates the alleged
ineffectiveness.  See Salinas, 163 S.W.3d at 740.

Further, with regard to trial
counsel’s failure to file a motion in limine regarding the extraneous offenses
and her failure to object to them during trial, to establish that counsel was
ineffective for either failing to file a motion or for failing to object, the appellant
must first show that the motion would have been granted or that the trial court
would have committed error by overruling the objection.  See Ex parte White,
160 S.W.3d 46, 53 (Tex. Crim. App. 2004) (“To show ineffective assistance of
counsel for the failure to object during trial, the applicant must show that
the trial judge would have committed error in overruling the objection.”); Roberson
v. State, 852 S.W.2d 508, 511 (Tex. Crim. App. 1993) (stating that
ineffective assistance of counsel is not shown when there is no showing that a
ruling on any of the pretrial motions would have changed anything in the case);
see also Jackson v. State, 973 S.W.2d 954, 957 (Tex. Crim. App.
1998) (stating that to satisfy Strickland when counsel failed to file a
motion to suppress, appellant was obliged to show that the motion would have
been granted); Muniz v. State, 851 S.W.2d 238, 258 (Tex. Crim. App.)
(stating that the failure to object to admissible evidence is not ineffective
assistance of counsel), cert. denied, 510 U.S. 837 (1993).

Because the record reflects that
Tarrant County has an open-file policy—giving defense counsel access to all of
the evidence of which the State was aware—and because under article 38.37,
section 2 of the code of criminal procedure, the extraneous offenses were
admissible, Brown cannot show that his defense counsel’s failure to file a
motion in limine with regard to the extraneous offenses constituted ineffective
assistance.  And because the record is silent as to counsel’s reason for
failing to object and because Brown has not shown that the trial court would
have erred by overruling an objection to the extraneous offense evidence, Brown
has failed to rebut the presumption that his trial counsel acted reasonably.  See
Thompson, 9 S.W.3d at 814.

Finally, although Brown argues that
trial counsel was ineffective in failing to suppress the seizure of his cell
phones, Detective Savage testified at the suppression hearing that no text
messages were recovered from Brown’s cell phones.  Further, even assuming that Brown’s
confessions stemmed from an unlawful cell phone seizure, the jury could have reached
the same conclusion that it did without considering Brown’s confessions.  That
is, the jury could have chosen to believe M.W.’s testimony about the indecent
touching and R.W.’s testimony about the text messages that resulted in Brown’s
appearance at M.W.’s school.  And it could have chosen to believe Detective
Savage’s testimony that Brown had a phone in his hand when he approached
Brown’s truck at the school on March 24—as had been arranged via text message
with R.W. pretending to be M.W.—and Brown’s audiotaped statement on March 24,
prior to Detective Savage’s taking his cell phone, that Brown was at the school
to talk to M.W., to confirm the portions of M.W.’s testimony that it found
credible and thereby convict Brown of the two counts of indecency.[14] 
See, e.g., Bazanes v. State, 310 S.W.3d 32, 40 (Tex. App.—Fort Worth
2010, pet. ref’d) (stating that a complainant’s testimony alone is sufficient
to support a conviction for indecency with a child).  Therefore, Brown has
failed to show that there is a reasonable probability that, but for counsel’s
alleged unprofessional error, the result of the proceeding would have been
different.  See Strickland, 466 U.S. at 694, 104 S. Ct. at
2068.  We overrule Brown’s third issue.

VI. Conclusion

Having overruled all of Brown’s
issues, we affirm the trial court’s judgment.   

 

 

                                                                             PER
CURIAM

 

 

PANEL:  MCCOY, J.;
LIVINGSTON, C.J.; and GABRIEL, J.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  February 2, 2012









[1]See
Tex. R. App. P. 47.4.





[2]M.W.
was born in 1993.  She was seventeen at the time of the trial.





[3]Brown’s
responses to R.W.’s texts included, “Have you been with anybody else besides
me?” and “You sure you haven’t been with anybody?  You talk like you have.  You
know I will be able to tell,” and “Sex with me only.  You promise.  I will
forever love you and take care of you.  I want the best for you.”





[4]See
Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966).





[5]M.W.
said that at some point in 2007, Brown attempted sexual intercourse with her
and that Brown took her virginity.





[6]Brown
cited Sossamon for the proposition that a confession obtained by a
promise or benefit can be involuntary.  816 S.W.2d at 345.





[7]Brown
notes,

Trial counsel unfortunately did not
inquire as to how the stop and immediate seizure of the Appellant and his cell
phone were not prima facie indicators that an arrest had already taken
place, but the seizure of non-contraband property during an encounter surely
escalated the that [sic] encounter to an arrest.

He also raises the failure to suppress the seizure of
the cell phone in his third issue on ineffective assistance of counsel.





[8]The
audiotape reflects that Brown actually said that he was there to talk to
M.W. and that he vehemently denied that he had ever picked her up at school.





[9]The
audiotape of the March 24 conversation does not contain an express statement by
Detective Savage to Brown that he was free to leave.





[10]Brown
never expressly stated anything about Jones during the recorded April 21
conversation.





[11]Detective Savage’s trial testimony was substantially
similar to his testimony during the suppression hearing and to the audiotaped
conversations.  He said that he interviewed Brown on April 21 and told Brown
before the interview that “he was not under arrest and that he could leave just
the way he came.”  Brown was not under arrest, was not handcuffed, and was not
detained in any way during the interview, and he gave his written statement on
a form pre-printed with Miranda warnings.

Brown asked Detective Savage what would happen after
he left, and Detective Savage explained the bond procedure to him.  Brown said
that he needed to get some help and Detective Savage admitted that he
responded, “We can do that,” but he also said that he had told Brown that in
the context of Brown putting his desire for counseling into his written
statement and not as a promise that Brown would receive counseling or that he
would receive it as a result of his written statement.  Brown left after the
interview.  Detective Savage reported to the judge that Brown had been
cooperative so that the judge could set an appropriate bond based on all of the
facts and circumstances.





[12]The
State introduced no additional evidence during the punishment phase of Brown’s
trial.





[13]In
her motion, counsel asked the court to order the State to produce its list of
witnesses, as well as the list of statements made by Brown to the State in
connection with the case; the State’s warrants and affidavits obtained to
search Brown’s property or person or to arrest Brown and any written waiver
alleged by the State to have been signed by Brown involving his right to
counsel, right to remain silent, or right to be free from search and seizure;
any photographic, physical, or scientific evidence in the case; any evidence pertaining
to Brown’s competency to stand trial, rule 404(a)(2) evidence of the alleged
victim’s character traits; and exculpatory evidence.





[14]The
audiotape of the March 24 conversation reflects that Detective Savage
approached the vehicle, greeted Brown by his first name, introduced himself as
a detective with the Arlington Police Department, and told Brown that he needed
to talk with him.  Brown replied, “Alright.”  Detective Savage asked Brown what
he was “doing up here today.”  Brown replied that he was there to talk to M.W.