

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

NO. 2-08-384-CR
NO. 2-08-385-CR

JOHNATHAN DAVID STRAHAN                                              APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

------------

FROM THE 271ST DISTRICT COURT OF WISE COUNTY

------------

## OPINION

------------

## I. INTRODUCTION

Appellant Johnathan David Strahan appeals his convictions for seven counts of possession of child pornography (Cause No. 14,235) and four counts of aggravated sexual assault (Cause No. 14,236). In five points, Strahan argues that the trial court erroneously refused to excuse a prospective juror for cause, that the trial court erroneously denied his motion to quash the indictment in Cause No. 14,236; that the evidence was legally insufficient in Cause No.

14,236; that the State made improper jury argument at the guilt-innocence phase of the trial; and that the trial court incorrectly cumulated his sentences. We will affirm the judgment in Cause. No. 14,236, and we will modify the judgment in Cause No. 14,235 and affirm it as modified.

## II. FACTUAL BACKGROUND[1]

A.H., who was born February 18, 1994, testified that she had lived in a house with John and Gennevieve (her grandparents),[2] her sister M., her mother, someone named Marley, a girl named Sarah, and Strahan. A.H. testified that Strahan was her dad.

A.H. testified that when she was about ten years old, Strahan asked his mother Gennevieve if A.H. could stay in his room, and she remembers Strahan taking pictures of her at night. A.H. testified that she wore a nightgown to bed and that she was awakened many times when Strahan would lift up her nightgown and take pictures of her. A.H. saw pictures of herself on Strahan's computer.

---

[1]... Because Strahan does not challenge the factual sufficiency of the evidence to support his convictions, we set forth only a brief factual background here. Additional background facts are provided as necessary throughout our opinion to fully address the particular points raised by Strahan.

[2]... The record revealed that John was the father of A.H.'s mother and that Gennevieve was the mother of Strahan and his brother Joe.

A.H. said that Strahan touched her "[p]retty much everywhere" and later specified that he touched her chest, her bottom, and her front private area with his hand, his mouth, and his penis. A.H. said that Strahan put his finger inside of her. A.H. testified that the touching happened a lot and went on for a while before she told anyone.

When A.H. made an outcry to a friend's mother, A.H. said, "[M]y dad was raping me." Shortly after A.H. made her outcry, she spoke with the sheriff's office. After the report was made, the police went to Strahan's residence to search it while CPS removed A.H.'s sister. The grandparents consented to the search of the residence, and the police seized from Strahan's room a computer, a knife, and porn magazines and paperbacks. When the police turned on Strahan's computer, he immediately said, "I know what this is about. I never touched [A.H.]," and stated in reference to the materials on his computer, "This is some weird stuff, but they're all of age."

At the conclusion of the evidence, the jury found Strahan guilty on all seven counts of possession of child pornography (Cause No. 14,235) and on all four counts of aggravated sexual assault (Cause No. 14,236). The trial court followed the jury's recommendations on punishment, sentencing Strahan to ten years' imprisonment and assessing a $10,000 fine on each count of possession of child pornography and sentencing Strahan to life imprisonment and assessing

3

a $10,000 fine on each count of aggravated sexual assault.  The trial court ordered the sentences to run consecutively.  This appeal followed.

### III.  DENIAL OF CHALLENGE FOR CAUSE

In his first point, Strahan argues that the trial court erroneously denied his challenge for cause to veniremember Ms. Fincher.  Strahan argues that Ms. Fincher could not be fair and was crying during her questioning.

The following exchange took place during the State's voir dire:

[THE STATE]:  And we want you to [make us do our job].  We want you to.  We want you to hold us to our burden; that's our responsibility.

Is there anyone else that has any concerns because of the charge?

THE JUROR:  (Indicating.)

[THE STATE]:  Yes, ma'am?

THE JUROR:  I just -

[THE STATE]:  Ms. Fincher?

THE JUROR:  I'm uncomfortable, and I don't know that I could really give him a fair –

I just want you to know how I feel.

[THE STATE]:  Okay.  Are you comfortable talking about that from where you're sitting?  Would you rather do it at a later time privately?  Can you explain –

THE JUROR:  Why –

4

[THE STATE]:  -- how you're feeling uncomfortable, or why?

THE JUROR:  I guess because I have a 16-year-old, too.

[THE STATE]:  Okay.

THE JUROR:  I don't know.  I just have a problem with sexual abuse.

[THE STATE]:  And you should.  I mean, it shouldn't happen.  It shouldn't happen to kids.  And it should be against the law.  I think we all agree on that.  And if it ever happened to your child, you would be devastated.  You would be angry.  And no one would expect you to be on the jury.  No [one] would expect you to be fair and impartial, if it were your own child.

But the question is:  Is because of what he's charged with, are you going to walk in and go; he must be guilty?  I don't even want to hear any of it; just give me a verdict form, Judge.

THE JUROR:  That's why I wanted you to know how I felt, because I know he's not --

I know I have concerns.

[THE STATE]:  And I -- I respect those feelings.  I have those feelings.  I bet everybody else on the panel has those feelings.

But I guess my question to you is:  Because of your feelings, are you going to, I guess, disregard your responsibility as a -- as a juror?

THE JUROR:  No.

[THE STATE]:  Are you going to come in and give him the -- the presumption of innocence and make us prove that guilt?

THE JUROR:  I would try.  I really would.  Yes, ma'am.

5

[THE STATE]: Okay. Knowing yourself better than anybody else in this courtroom, would you -- do you think you could do it? Do you think you could hold us to that burden?

THE JUROR: I would try.

[THE STATE]: Okay. Anybody else have any questions or concerns?

At the conclusion of voir dire, Defense counsel challenged Ms. Fincher, for cause, arguing that she "couldn't be fair." The trial court stated that it had written down that Ms. Fincher felt "uncomfortable," that she said that she would try to hold the State to its burden, and that she had not unequivocally stated one way or the other that she could not be fair. The trial court denied the defense's challenge for cause. When defense counsel stated that the trial court had erroneously overruled challenges to Ms. Fincher and two other jurors and requested three additional strikes, the trial court denied defense counsel's request for additional strikes.

A trial court's ruling on a challenge for cause will not be overturned on appeal unless the ruling constitutes an abuse of discretion. *Ladd v. State*, 3 S.W.3d 547, 559 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1070 (2000). When we review a trial court's decision to grant or to deny a challenge for cause, we look at the entire record. *Feldman v. State*, 71 S.W.3d 738, 744 (Tex. Crim. App. 2002). We give great deference to the trial court's decision

6

because the trial judge is present to observe the demeanor of the veniremember and to listen to her tone of voice. *Id.* Particular deference is given when the potential juror's answers are vascillating, unclear, or contradictory. *Id.*; *King v. State*, 29 S.W.3d 556, 568 (Tex. Crim. App. 2000).

Here, the record reflects that Ms. Fincher did not cry during voir dire questioning; another veniremember, Jody Carter, did. Ms. Fincher expressed concerns but agreed that she would hold the State to its burden. From Ms. Fincher's responses, the trial court could have reasonably concluded that she was expressing her intention to follow the law. *See Stallings v. State*, 47 S.W.3d 170, 174 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (indicating trial court could have concluded veniremember was expressing intention to follow the law by not forming an opinion until he had heard the case). The trial court saw and heard Ms. Fincher as she responded to questioning, and in light of Ms. Fincher's answers we must defer to the trial court's evaluation and belief that she could follow the law. *Feldman*, 71 S.W.3d at 744. Based on the record as a whole, we hold that the trial court did not abuse its discretion by denying Strahan's challenge for cause to Ms. Fincher. *See Stallings*, 47 S.W.3d at 174; *see also Newbury v. State*, 135 S.W.3d 22, 35 (Tex. Crim. App.) (holding that trial court did not abuse its discretion by denying appellant's challenge for cause to veniremember who gave conflicting answers because

7

trial court was in best position to evaluate veniremember's demeanor and responses), *cert. denied*, 542 U.S. 990 (2004). We therefore overrule Strahan's first point.

## IV. DENIAL OF MOTION TO QUASH

In his second point, Strahan argues that the trial court erred in Cause No. 14,236 by denying his motion to quash the indictment. Strahan complains that because the indictment did not allege a specific date but instead used "on or about" language, the offenses presented to and indicted by the grand jury could have been different than those presented at trial.

The State may allege in an indictment that an offense occurred "on or about" a date certain. *Sledge v. State*, 953 S.W.2d 253, 255–56 (Tex. Crim. App. 1997) (citing *Mitchell v. State*, 168 Tex. Crim. 606, 611, 330 S.W.2d 459, 462 (1959)). It is well settled that the "on or about" language of an indictment allows the State to prove a date other than the one alleged in the indictment as long as the date proved is anterior to the presentment of the indictment and within the statutory limitations period. *See* Tex. Code Crim. Proc. Ann. art. 21.02(6) (Vernon 2009); *Wright v. State*, 28 S.W.3d 526, 532 (Tex. Crim. App. 2000), *cert. denied*, 531 U.S. 1128 (2001); *Scoggan v. State*, 799 S.W.2d 679, 680 n.3 (Tex. Crim. App. 1990); *Thomas v. State*, 753 S.W.2d 688, 692 (Tex. Crim. App. 1988).

"[A]n indictment must 'allege on its face the facts necessary (1) to show that the offense was committed, (2) to bar a subsequent prosecution for the same offense, and (3) to give the defendant notice of precisely what he is charged with.'" *State v. Edmond*, 933 S.W.2d 120, 131 (Tex. Crim. App. 1996) (Baird, J., concurring and dissenting) (quoting *Terry v. State*, 471 S.W.2d 848, 852 (Tex. Crim. App. 1971)). An indictment or information normally provides sufficient notice if it tracks the language of the statute. *Olurebi v. State*, 870 S.W.2d 58, 62 (Tex. Crim. App. 1994). We review a trial court's denial of a motion to quash an indictment for an abuse of discretion. *Weatherby v. State*, 61 S.W.3d 733, 736 (Tex. App.—Fort Worth 2001, pet. ref'd).

Here, the four counts of aggravated sexual assault that were alleged in the indictment, which was filed on May 24, 2007, tracked the language of the aggravated sexual assault statute. *See* Tex. Penal Code Ann. § 22.021(a)(1)(B) (Vernon Supp. 2009). The indictment alleged that Strahan had committed aggravated sexual assault of A.H. on or about November 30, 2005; on or about January 30, 2006; on or about July 30, 2006; and on or about November 30, 2006. During the trial, A.H. testified that "it happened a lot," that it was pretty random, and that it went on for about two years *before* she told Ms. Heeter on December 1, 2006. At the conclusion of the evidence, Strahan put the State

9

to an election outside the presence of the jury. The State elected "the first time it happened, the second time it happened, the third time it happened, and then the last time it happened" to coincide with the four times alleged in the indictment. Each of these times occurred before A.H. made her outcry on December 1, 2006, and therefore occurred before the indictment date of May 24, 2007.

The evidence thus demonstrates that the acts alleged in the indictment occurred before the presentation of the indictment to the grand jury. *See* Tex. Code Crim. Proc. Ann. art. 21.02(6); *Wright*, 28 S.W.3d at 532. And there is no statute of limitations period for aggravated sexual assault under penal code section 22.021(a)(1)(B). *See id.* art. 12.01(1)(B) (Vernon Supp. 2009). Moreover, grand jury proceedings are required to be kept secret, *see id.* art. 20.02(a) (Vernon Supp. 2009), so no evidence exists here that the offenses presented to the grand jury differed from the offenses proved at trial. We hold that the trial court did not abuse its discretion by denying Strahan's motion to quash the indictment in Cause No. 14,236. *See Weatherby*, 61 S.W.3d at 736 (holding that trial court did not abuse its discretion by failing to quash indictment when there was no evidence to show that offenses presented to grand jury differed from offenses proved at trial). We overrule Strahan's second point.

In his third point, Strahan argues that the evidence is legally insufficient to support his conviction in Cause No. 14,236 because the State failed to prove that A.H. was not his spouse.

To prove a case of aggravated sexual assault of a child, the State must show that the defendant (1) intentionally or knowingly (2) caused the penetration (3) of the sexual organ (4) of a child. Tex. Penal Code Ann. § 22.021(a)(1)(B). A child is defined as a person younger than seventeen years of age who is not the spouse of the actor. *Id.* § 22.011(c)(1) (Vernon Supp. 2009). However, direct evidence that the victim was not the spouse of the defendant is not required; it may be proved by circumstantial evidence. *Martin v. State*, 819 S.W.2d 552, 556 (Tex. App.—San Antonio 1991, no pet.) (evidence that victim was six to nine years of age when offenses occurred was sufficient evidence that she was not defendant's spouse); *Meyers v. State*, 737 S.W.2d 6, 8–9 (Tex. App.—Corpus Christi 1987, no pet.) (evidence sufficient to support inference that child victim was not defendant's spouse).

The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The

11

appellate court must view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton*, 235 S.W.3d at 778.

In the instant case, we have carefully reviewed the record, and although we find no direct evidence establishing that A.H. was not Strahan's spouse, there is ample circumstantial evidence establishing this fact. The evidence established that A.H. was approximately ten years old when the sexual assaults began taking place. A.H. initially testified that Strahan was her father but later testified that it was confusing and that she did not know who her father was. However, when A.H. made her outcry to a friend's mother, she said that her dad was raping her and then identified Strahan at trial as the perpetrator. The nurse who examined A.H. also testified that A.H. had told her that her dad put his privates and his finger in her privates and that her dad was Strahan. Moreover, when A.H.'s mother testified, she said that she had a sexual relationship with Strahan while her husband Joe was in jail and that occurred approximately two weeks before she found out that she was pregnant with A.H. A.H.'s mother testified that A.H. looks like Strahan and that she believes Strahan is A.H.'s father, even though there has been no DNA testing and Joe's

12

name is on the birth certificate. The record also reveals that while the State was questioning A.H.'s mother about something that Strahan had said, defense counsel objected based on the husband-wife privilege, thereby indicating a belief that A.H.'s mother (not A.H.) was married to Strahan while Strahan was sexually assaulting A.H.

Although the State has the burden to prove every element of the offense of aggravated sexual assault, after reviewing the evidence in the light most favorable to, or consistent with, the verdict of guilt, we cannot say that the evidence supports any inference other than that A.H. was not Strahan's spouse. *See Meyers*, 737 S.W.2d at 8–9 (looking at circumstantial evidence and holding that evidence supported no inference other than that the victim was not the spouse of the appellant); *see also Salinas v. State*, No. 13-99-00226-CR, 2000 WL 34252060, at *2 (Tex. App.—Corpus Christi Aug. 31, 2000, no pet.) (not designated for publication) (holding that it was legally impossible for victim to be appellant's spouse because victim was five years old when sexual assaults occurred and appellant testified that he was victim's father).

We hold that the evidence is legally sufficient for a rational factfinder to conclude that A.H. was not Strahan's spouse. We overrule Strahan's third point.

13

## VI. PROPER JURY ARGUMENT

In his fourth point, Strahan argues that the State made an improper jury argument during the guilt-innocence phase of trial. Specifically, Strahan argues that the prosecutor's statement that he believed he had proven his case constituted improper argument.

During closing arguments, defense counsel reread a portion of the jury charge: "The Prosecution has the burden of proving the Defendant guilty, and it must do so by proving each and every element charged beyond a reasonable doubt. And if it fails to do so, you must acquit the Defendant." Immediately thereafter, defense counsel made the following statements:

> Do you remember when you first sat down in this chair, and Judge Fostel said, you're going to hear evidence from the witness stand, you're going to hear evidence in the form [of] maybe a photograph or an exhibit?
>
> That's what you consider when you decide if the State has proved each and every element of the offense. *And they have catastrophically failed in both of these cases.*
>
> . . . .
>
> And they say that matter is proven, but they alleged something that they can't prove.
>
> I'd be mad as I could be at my District Attorney's office, if I was you. I'd be furious.
>
> I don't live her[e]. I don't vote here. I may not ever get another deal here. I'd be out of here. I'd be furious.

14

. . . .

The question is: Are those the photographs that were on that computer in a place where he knew where they were and he could identify where they were?

And the way they have brought this to you does not prove that; does not prove that.

If they've got 900 photographs, maybe they can try one of those and get it right.

. . . .

They may try one of these other sexual assaults and get it right; if it's -- if it's been hundred of times; there's nothing wrong with any of that.

They failed on what they brought you here. They failed. They failed miserably. [Emphasis added.]

During the State's rebuttal, the prosecutor responded as follows:

You all said, when Ms. McCormick was talking to you on voir dire, that if we proved our case, you could find him guilty.

Sometimes for a lot of people it takes a certain amount of bravery to find somebody guilty and convict them of their crimes. I understand that.

Sometimes it's easy to just say, oh, we could just let him go and forget the whole thing; I mean, that's fine, you know. But I —

And I understand that, too.

But I'm -- I'm going to hold you to your word, because I believe we have proven our case, beyond any doubt, actually, that there can be no doubt --

15

Strahan's objection followed, asserting that the prosecutor's feelings are not the proper subject of argument.

To be permissible, the State's jury argument must fall within one of the following four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement. *Felder v. State*, 848 S.W.2d 85, 94–95 (Tex. Crim. App. 1992), *cert. denied*, 510 U.S. 829 (1993); *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973). The prosecution is afforded a wide degree of latitude in drawing reasonable deductions from the evidence so long as the inferences drawn are reasonable, fair, legitimate, and offered in good faith. *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988). A prosecutor is permitted to argue his opinion about a case to the jury so long as it is based on the evidence in the record and does not constitute unsworn testimony. *Wolfe v. State*, 917 S.W.2d 270, 281 (Tex. Crim. App. 1996); *Barnard v. State*, 730 S.W.2d 703, 718 (Tex. Crim. App. 1987), *cert. denied*, 485 U.S. 929 (1988). And, likewise, a prosecutor may answer jury arguments by the defense as long as the response does not exceed the scope of the invitation. *Andujo v. State*, 755 S.W.2d 138, 144 (Tex. Crim. App. 1988).

Although Strahan characterizes the prosecutor's argument as impermissibly interjecting her "feelings," her remarks actually argue that the

16

State shouldered its burden of proof. *Contra Prudholm v. State*, 274 S.W.3d 236, 241 (Tex. App.—Houston [1st Dist.] 2008, pet. granted) (holding prosecutor's argument that "I didn't really want to come to work because I didn't want to have to deal with this filth. I'm tired of it. It's disgusting," constituted impermissible expression of personal feelings). To the extent the prosecutor's argument may be construed as interjecting her belief that the State has met its burden of proof, the argument was made in response to the defense argument that the defense believed the State had catastrophically failed to prove the elements of the offenses in both cases. *See Mijores v. State*, 11 S.W.3d 253, 258 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (holding prosecutor's argument that the victim was credible was permissible argument when made in response to defense argument that in his opinion victim was not being entirely honest about the event); *see also Andujo*, 755 S.W.2d at 144; *Yates v. State*, 917 S.W.2d 915, 919 (Tex. App.—Corpus Christi 1996, pet. ref'd) (holding that prosecutor's statement—in which he employed a rhetorical device to argue that the evidence of appellant's guilt was overwhelming—did not indicate that his arguments were based on anything other than the evidence admitted at trial); *Ivison v. State*, No. 13-01-00519-CR, 2002 WL 34230971, at *9 (Tex. App.—Corpus Christi Aug. 30, 2002, no pet.) (not designated for publication) (holding that prosecutor's remarks were made in response to

17

defendant's arguments and did not exceed the bounds of the invitation).  We overrule Strahan's fourth point.

## VII.  Cumulation of Sentences

In his fifth point, Strahan argues that the trial court improperly cumulated his sentences because the State made no motion for cumulation and because the orders do not meet the specificity requirements imposed by case law. Strahan also argues that the trial court improperly attempted to correct the alleged defects by signing a judgment nunc pro tunc.

### A.  Standard of Review

A trial court's decision to cumulate sentences is reviewed for an abuse of discretion.  *Hurley v. State*, 130 S.W.3d 501, 503 (Tex. App.—Dallas 2004, no pet.).  An improper cumulation order is a void sentence.  *Id.*

### B.  No Motion Required

Article 42.08(a) of the code of criminal procedure provides, in relevant part, as follows:

> When the same defendant has been convicted in two or more cases, judgment and sentence shall be pronounced in each case in the same manner as if there had been but one conviction.  Except as provided by Sections (b) and (c) of this article, *in the discretion of the court*, the judgment in the second and subsequent convictions may either be that the sentence imposed or suspended shall begin when the judgment and the sentence imposed or suspended in the preceding conviction has ceased to operate, or

18

that the sentence imposed or suspended shall run concurrently with the other case or cases . . . .

Tex. Code Crim. Proc. Ann. art. 42.08(a) (Vernon Supp. 2009) (emphasis added).

As set forth above, article 42.08 vests a trial court with discretion to cumulate a sentence without the necessity for a motion by the State. Consequently, Strahan is presumed to know that the cumulation of his sentences was possible. That being so, the lack of a pretrial motion by the State to cumulate the sentences could not have rendered the cumulation order void. *See Levine v. State*, Nos. 07-00-00154-CR, 07-00-00155-CR, 2001 WL 43052, at \*3 (Tex. App.—Amarillo Jan. 16, 2001, no pet.) (not designated for publication) (holding that article 42.08 authorizes a trial court to cumulate a sentence without the necessity for a motion by the State); *see also Castrellon v. State*, No. 02-05-00286-CR, 2006 WL 2830176, at \*1 (Tex. App.—Fort Worth Oct. 5, 2006, no pet.) (mem. op., not designated for publication) (holding that appellant was not entitled to notice of stacking because statutes provided appellant with notice). We hold that the trial court did not abuse its discretion by entering a cumulation order without a motion from the State. We overrule this portion of Strahan's fifth point.

## C. Specificity of Cumulation Order

A cumulation order must be specific enough that prison authorities know how long to detain the prisoner. *Stokes v. State*, 688 S.W.2d 539, 540 (Tex. Crim. App. 1985). The Texas Court of Criminal Appeals has identified five elements for a valid cumulation order: (1) the cause number of the prior conviction; (2) the correct name of the trial court where the conviction was taken; (3) the date of the prior conviction; (4) the term of years of the prior conviction; and (5) the nature of the prior conviction. *Id.*; *Ward v. State*, 523 S.W.2d 681, 682 (Tex. Crim. App. 1975). However, not all elements are necessary for a cumulation order to be valid, so long as the earlier sentence with which the latest sentence will be cumulated can be properly identified. *Stokes*, 688 S.W.2d at 540.

The cumulation order should be sufficiently clear so that it may be understood without having to refer to other evidence. *Id.* A trial court may correct a cumulation order nunc pro tunc to add descriptive details of the prior offenses inadvertently omitted from the trial court's first cumulation order. *See Williams v. State*, 675 S.W.2d 754, 765 n.6 (Tex. Crim. App. 1984). When a cumulation order is not sufficiently clear, an appellate court may reform the order and affirm it as modified if the record reveals all information required to reform it. *Banks v. State*, 708 S.W.2d 460, 462 (Tex. Crim. App. 1986).

## 1. The Cumulation Orders

Here, in open court, the trial court pronounced the sentence in the child pornography case (Cause No. 14,235) at ten years' confinement and a $10,000 fine for each of the seven counts. The trial court pronounced the sentence in the aggravated sexual assault case (Cause No. 14,236) at confinement for life and a $10,000 fine for each of the four counts. The trial court concluded,

> As to the sentences in Cause No. 14,235, it is the order of the Court that these the sentences -- the sentences in that case will run consecutively.

> In Cause No. 14,236, it is the order of the Court that the life sentences in that case, the Defendant's sentences, too, will run consecutively.

Strahan objected to the consecutive sentences, and the trial court overruled his objection.

The judgment for Cause No. 14,235 reflects the ten-year sentences and the $10,000 fines that were assessed in open court in each of the seven counts and states, "This sentence for each count shall run consecutively, and consecutively with the sentence in 14,236."

The judgment for Cause No. 14,236 reflects the life sentences and the $10,000 fines that were assessed in open court in each of the four counts and states, "This sentence for each count shall run consecutively, and consecutively with the sentence in 14,235."

21

Less than a month later, the trial court signed judgments nunc pro tunc in each of the cases. The judgment nunc pro tunc in Cause No. 14,236 states, "This sentence for each count shall run consecutively as follows: Count II shall run consecutively to Count I; Count III shall run consecutively to Count II; Count IV shall run consecutively to Count III."

The judgment nunc pro tunc in Cause No. 14,235 states,

This sentence for each count shall run consecutively as follows:

Count I shall run consecutively to Count IV of Cause #14,236;

Count II shall run consecutively to Count I;

Count III shall run consecutively to Count II;

Count IV shall run consecutively to Count III;

Count V shall run consecutively to Count IV;

Count VI shall run consecutively to Count V;

Count VII shall run consecutively to Count VI.

2. Judgments Nunc Pro Tunc Added Specificity

The situation presented here is unique: the oral pronouncement of sentence mentioned the trial court's intent to stack the sentences and ordered them to run consecutively; the judgments in each case also captured this. However, as set forth above, neither the oral pronouncement nor the judgments

22

in each case stated which case's sentence would be served first. The judgments nunc pro tunc in each case corrected that omission, showing that the sentence for Count I of Cause No. 14,236 would be served first. Because a trial court may correct a cumulation order nunc pro tunc to add descriptive details, we conclude that the judgments nunc pro tunc were the proper vehicle for the trial court to accomplish what it set out to do in its oral pronouncement. *See Williams*, 675 S.W.2d at 765 n.6.

However, both the original judgments and the judgments nunc pro tunc failed to list the name of the court, the date of the conviction, the years of punishment assessed, and the nature of the conviction; the judgments nunc pro tunc list only the cause numbers. In a similar case in which only the cause number and county were mentioned in a cumulation order out of Dallas County, the appellate court took judicial notice of certain facts concerning how the Dallas County District Clerk's office assigns case numbers. *See Gaston v. State*, 63 S.W.3d 893, 900 (Tex. App.—Dallas 2001, no pet.). In this case, because one appeal was taken from the judgments in both Cause No. 14,235 and Cause No. 14,236, we have both judgments before us simultaneously. We can see that the cause numbers are sequential, that the cases were tried at the same time, and that both cases arose out of Wise County; therefore, we will take judicial notice of how the Wise County Clerk's Office assigns case

23

numbers. *See id.* We do not condone the lack of specificity of the cumulation orders here. But we conclude that, given the assignment of unique case numbers in Wise County, the TDCJ will be able to correctly identify the aggravated sexual assault convictions in Wise County for cumulation with the pornography convictions.

However, out of an abundance of caution, we sustain the remainder of Strahan's fifth point complaining of the lack of the name of the count, date of conviction, years of punishment assessed, and nature of conviction in the cumulation order[3] and modify the judgment in Cause No. 14,235 to state,

> This sentence for each count shall run consecutively as follows:
>
> Count I shall run consecutively to the life sentence imposed on October 9, 2008, in Count IV of Cause #14,236 from the 271st District Court of Wise County involving aggravated sexual assault of a child;
>
> Count II shall run consecutively to Count I;
>
> Count III shall run consecutively to Count II;

---

[3] To the extent that Strahan complains in his fifth point that the cumulation orders are void because the offenses arose out of the same criminal episode, we overrule that portion of his fifth point. *See* Tex. Penal Code Ann. § 3.03(b)(2)(A) (Vernon Supp. 2009) (specifically allowing trial court to run such sentences concurrently *or consecutively* when an aggravated sexual assault is involved).

Count IV in case #14,235 shall run consecutively to Count III;

Count V shall run consecutively to Count IV;

Count VI shall run consecutively to Count V;

Count VII shall run consecutively to Count VI.

See Sanders v. State, No. 02-08-00058-CR, 2008 WL 4445644, at *9–11 (Tex. App.—Fort Worth Oct. 2, 2008, no pet.) (mem. op., not designated for publication) (modifying cumulation order that included only a cause number out of U.S. District Court); see also Revels v. State, No. 05-07-01555-CR, 2008 WL 5177374, at *9–10 (Tex. App.—Dallas Dec. 11, 2008, no pet.) (modifying cumulation order that provided only a cause number because the intent of the trial court as to sentencing was ascertainable from the record).

## VIII. CONCLUSION

Having overruled Strahan's first four points and a portion of his fifth point, we affirm the trial court's judgment in Cause No. 14,236. Having sustained a portion of Strahan's fifth point and modified the cumulation order in Cause No. 14,235, we affirm as modified the judgment in Cause No. 14,235. See Tex. R. App. P. 43.2(b).

SUE WALKER
JUSTICE

PANEL: LIVINGSTON, WALKER, and MEIER, JJ.

PUBLISH

DELIVERED: January 7, 2010