

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-10-00452-CR

MICHAEL RAY BROWN                                                    APPELLANT

V.

THE STATE OF TEXAS                                                         STATE

------------

FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

## I. Introduction

In three issues, Appellant Michael Ray Brown appeals his conviction for two counts of indecency with a child.  We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

## II. Factual and Procedural History

The complainant, M.W., made a sexual abuse outcry about Brown to her school counselor when she was in the ninth grade.[2]  The school counselor told M.W.'s parents about the outcry.  M.W.'s father, R.W., called the Arlington police and then he pretended to be M.W. and sent Brown sexually explicit text messages from his cell phone.  R.W. sent his messages and Brown's responses from his phone to his e-mail, printed them out, and brought them to Arlington Police Detective Garth Savage, who was investigating the offense.[3]

Detective Savage wanted to confirm that Brown was the one sending the text messages.  He and R.W. arranged for Brown to meet R.W. (sending texts as M.W.) at M.W.'s school at 11:30 a.m. on March 24, 2008.  R.W. also printed out Brown's text responses from the day of the meeting, and Detective Savage was present when R.W. received these messages on March 24 from Brown.

When Brown arrived at M.W.'s school, Detective Savage spoke with him about the text messages and took his phones, and Brown gave a written statement on a form preprinted with *Miranda* warnings[4] and signed consent-to-

---

[2]M.W. was born in 1993.  She was seventeen at the time of the trial.

[3]Brown's responses to R.W.'s texts included, "Have you been with anybody else besides me?" and "You sure you haven't been with anybody?  You talk like you have.  You know I will be able to tell," and "Sex with me only.  You promise.  I will forever love you and take care of you.  I want the best for you."

[4]*See Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966).

search forms, which also had his rights preprinted on them, for the phones. Brown left after giving his statement.

Brown gave another written statement to the police on April 21, 2008. Detective Savage said that Brown was not in custody when he gave this statement and that Brown left after giving the statement. After Brown left, Detective Savage obtained a warrant for Brown's arrest. Detective Savage taped his March 24 and April 21 conversations with Brown; Brown did not know that he was being taped.

The State charged Brown with one count of sexual assault (digital penetration of M.W.'s female sexual organ) and two counts of indecency with a child (touching M.W.'s breasts and causing M.W. to touch Brown's penis), occurring on or about June 1, 2007.

Brown filed two motions to suppress. The first motion sought to suppress any of Brown's statements, and the second sought to suppress the text messages. The trial court denied both motions.

At trial, M.W. claimed that Brown began touching her "private areas" when she was five years old and that the sexual abuse continued until March 2008, when M.W.'s teacher asked her about her repeated absences from class. M.W. said her absences occurred because Brown would pick her up from school during lunch and take her back to his apartment, where he would touch her breasts, have her touch his penis, and move his finger around inside her female

3

sexual organ.[5]  Brown had bought a cell phone for M.W., and they would text each other throughout the day.  R.W. stated that he was very upset when he found out about the sexual abuse, especially since Brown had been a grandfather figure to M.W.

The trial court overruled Brown's objections to his March 24 statement and admitted it as State's Exhibit 3.  In the March 24 statement, Brown gave his age as fifty-two and stated that he had completed twelve years of formal education and could read, write, and understand the English language.  Detective Savage read the following into evidence from Brown's statement:

> I have never picked up [M.W.] from Timberview High School.  I have not had sex with [M.W.] and am certain that all claims she is making [are] false.  I do acknowledge having given [M.W.] money on various occasion[s] upon her request.  I do acknowledge that I have brought [M.W.] lunch to school on numerous occasions.  I have on many occasions talked about abstaining from actual sexual contact to avoid pregnancy.  I have acknowledge[d] that I have had conversations with [M.W.] of a sexual nature.  I even saved several texts (which may have been someone other than [M.W.] sending them) that were very explicit in nature that really shocked me that she would say such things.  But in reality it may have been the police sending the text[s].  I realize that even the conversations were wrong.  I have never been with [M.W.] sexually no where [sic].  The money and lunch were always her asking and I tried to accommodate her in order to keep a positive relationship with frie[n]ds.  She is a very friendly girl, but she knows how to pretend and act in order to achieve her goals.  I realize that the things [M.W.] accuses me of are truly false and with [sic] documentation and substance.  Even today, she had asked me to bring pizza and I was confronted by police.  Apparently, I was being led on thinking it was [M.W.]

---

[5]M.W. said that at some point in 2007, Brown attempted sexual intercourse with her and that Brown took her virginity.

4

The school secretary can acknowledge that on many occasions I have brought lunch to [M.W.] per her request.

The trial court also admitted Brown's April 21 statement as State's Exhibit 4-A after overruling Brown's objections, and Detective Savage read the following portion into evidence:

I hereby admit to kissing and touching [M.W.] when we were alone at a park in Arlington. She would touch my penis and I would touch her clitoris. I also touched her breast. This happened on two occasions during the summer of 2007. These incidents happened during the day in my vehicle. These were the only times I had sexual contact with her. I never actually put my penis into her vagina. The touching was under her clothes. She nor I never fully undressed. I realize the error of my ways and am taking full responsibility. I would desire to seek therapy or counseling in this matter.

The trial court admitted State's Exhibit 8, which contained audiotape recordings of Brown's March 24 and April 21 conversations with Detective Savage.

The jury found Brown not guilty of the sexual assault charge, and the trial court entered a judgment of acquittal on that offense. The jury convicted Brown of both counts of indecency with a child and assessed punishment at fifteen years' confinement and a $5,000 fine for each count, and the trial court entered judgment on the verdicts, setting Brown's sentences to run concurrently. This appeal followed.

### III. Motion to Suppress

In his first issue, Brown argues that the trial court abused its discretion by denying his motion to suppress his statements. Specifically, he complains that the instant Detective Savage seized his phone, an arrest was made and that all

5

actions and statements that followed the stop and seizure should have been suppressed. Further, Brown claims that he was induced and threatened by a polygraph examiner to divulge his guilt, making his confession invalid.

## A. Preservation of Error

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004). A reviewing court should not address the merits of an issue that has not been preserved for appeal. *Wilson v. State*, 311 S.W.3d 452, 473 (Tex. Crim. App. 2010) (op. on reh'g). Preservation of error is a systemic requirement that this court should review on its own motion. *Id.* at 473–74; *Ford v. State*, 305 S.W.3d 530, 532–33 (Tex. Crim. App. 2009).

In his "Motion to Suppress Statements," Brown argued that "[a]t the time of any conversations between [Brown] and law enforcement officers, [Brown] was (a) under arrest or (b) substantially deprived of freedom by the conduct of the law enforcement officers and the circumstances surrounding the arrest or deprivation of freedom." He alleged that any statements made by him were involuntary and

6

were coerced and enticed from him; that he was deprived of the right to counsel and did not make an intelligent and knowing waiver of that right; and that his statements "were tainted by the illegal and unlawful detention and arrest, in violation of [his] constitutional rights under the Fifth and Fourteenth Amendments to the Constitution of the United States, Article I, Section 9 of the Texas Constitution and Article 38.23 of the Texas Code of Criminal Procedure." Further, he argued that the statements were taken "without the safeguards required by and in violation of Article 38.22 of the Code of Criminal Procedure" and that the admission of his statements would violate his rights under the "Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, Article I, Section[s] 9 and 10 of the Texas Constitution and Articles 1.05 and 38.23 of the Texas Code of Criminal Procedure." Nothing in the motion indicates at what point Brown was taken into custody or provides any factual basis to conclude that he was taken into custody.

At the suppression hearing, Brown's cross-examination of Detective Savage focused on the text messages printed out by R.W. and the polygraph examination. His arguments the following day, after the trial court reviewed the March 24 and April 21 audiotaped conversations between Brown and Detective Savage, focused again on the text messages and on enticement or coercion by the polygrapher as an agent of the Arlington police department. Brown did not argue that he was taken into custody when Detective Savage took his cell phone.

7

During trial, Brown objected to the admission of his written statements, citing code of criminal procedure articles 38.22 and 38.23 and *Sossamon v. State*, 816 S.W.2d 340 (Tex. Crim. App. 1991), *abrogated on other grounds by Graham v. State*, 994 S.W.2d 651, 655–56 (Tex. Crim. App.), *cert. denied*, 528 U.S. 974 (1999).[6] He did not argue that he was arrested when Detective Savage took his cell phone.

For the first time on appeal, Brown argues that he was arrested when Detective Savage detained him and took his cell phone on March 24.[7] Brown's situation is similar to that of the appellant in *Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005). In *Swain*, the appellant argued for the first time on appeal that his oral statement to a police detective and an investigator from the district attorney's office and his third written statement were obtained in violation of his right to counsel under the federal and state constitutions because he was questioned after he had appeared before a magistrate and had requested the

---

[6]Brown cited *Sossamon* for the proposition that a confession obtained by a promise or benefit can be involuntary. 816 S.W.2d at 345.

[7]Brown notes,

> Trial counsel unfortunately did not inquire as to how the stop and immediate seizure of the Appellant and his cell phone were not *prima facie* indicators that an arrest had already taken place, but the seizure of non-contraband property during an encounter surely escalated the that [sic] encounter to an arrest.

He also raises the failure to suppress the seizure of the cell phone in his third issue on ineffective assistance of counsel.

8

appointment of counsel, rendering the statements inadmissible under article 38.23 of the code of criminal procedure. *Id*. at 363, 365. In his written motion, however, the appellant merely argued that "any statements made by Defendant were obtained in violation of his right to counsel and his right against self-incrimination as guaranteed by U.S. Const. amends. V, VI, and XIV, and Tex. Const. art. I, §§ 10 and 19," and argued generally that the statements were inadmissible under article 38.23. *Id*. at 365.

The court of criminal appeals held that because the arguments in the appellant's motion were "global in nature and contained little more than citations to constitutional and statutory provisions," and because at the suppression hearing, the appellant failed to complain about being questioned after asserting his right to counsel and "instead simply objected that his statements were inadmissible because the police illegally arrested him and failed to comply with the requirements of Articles 38.22, 14.03, and 14.06," the appellant had failed to preserve the arguments that he had tried to make on appeal. *Id*. (citing Tex. R. App. P. 33.1).

Like *Swain*, here, Brown made global arguments in his written motion to suppress. At the suppression hearing, he focused on the admissibility of the text messages under his other motion and on the actions of the polygrapher on April 21 with regard to coercion and enticement, not the actions of Detective Savage on March 24 in taking Brown's cell phone. And although the trial court made findings of fact and conclusions of law on the record at the conclusion of the

9

suppression hearing, the findings and conclusions did not address the seizure of the cell phone, other than to find that Brown was not in custody on March 24. Brown did not argue at trial that Detective Savage arrested him on March 24 when he took Brown's cell phone from him. Therefore, Brown has failed to preserve this argument for our review. *See* Tex. R. App. P. 33.1; *Swain*, 181 S.W.3d at 365. We overrule the first portion of Brown's first issue.

## B. Suppression

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). When, as here, the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *State v. Kelly*, 204 S.W.3d 808, 818–19 (Tex. Crim. App. 2006). We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id.* at 818.

## 1. Trial Court's Findings of Fact and Conclusions of Law

The trial court read the following pertinent findings of fact and conclusions

of law into the record:

> Detective Savage began his investigation of the case. The father of the alleging party sent text messages pretending to be the injured party. The defendant responded to those text messages. The defendant agreed to meet at the school. Officers approached the defendant at the school where the defendant was thinking he was there to pick up the child.[8]

> Defendant was told of the allegation. Defendant signed a statement that contained Miranda warnings. Defendant was not in custody. Defendant had not been deprived in any significant manner away [sic] of his freedom [of] movement. Defendant made a—signed a statement in which he denied hav[ing] any sexual relationship with the injured party. He admitted, however, to talking with her about sex.

> Defendant agreed to take a polygraph examination. A polygraph was taken several weeks after the initial contact. The defendant was permitted to go voluntarily to the polygraph site. He was not deprived of his freedom of movement at the polygraph exam location. He was not in custody. He was not under arrest. The defendant met voluntarily with Mr. Jones of Wood's Polygraph Service. He took the polygraph test and was told that he did not pass the test and that he should come clean.

> At the time, Wood's Polygraph was an independent contractor—or rather, in an independent contractual relationship with the Arlington P.D. However, detectives—I'm sorry, Mr. Jones—you have no evidence that Mr. Jones made the statement to the defendant that he should come clean at the urging of the Arlington Police Officer Savage or any other member of the Arlington Police Department.

---

[8]The audiotape reflects that Brown actually said that he was there to *talk* to M.W. and that he vehemently denied that he had ever picked her up at school.

11

No testimony that Mr. Jones was acting as an agent of the Arlington Police Department at the time he made such statement. And, again, the defendant was not in custody. He was not deprived of his freedom in any manner.

The defendant's second statement was freely and voluntarily made. In the statement, the defendant expressed hope that he would get treatment. In his voluntary statements to the police, he was expressing the hope of getting probation. Mr. Jones related to the defendant that he had known of cases where people had gotten probation for similar crimes. However, Mr. Jones did not promise the defendant he would get probation.

And, again, the defendant was never told he was under arrest, and his freedom of movement was never limited or restricted in any manner. In fact, he was expressly told that he was free to leave on each occasion.[9]

For these reasons, and for all these reasons, the Court denies your motion to suppress and rules that you have not met—you have not shown a violation of Article 38.22 nor Miranda.

After voir dire and before opening statements, the trial court added the following:

My previous ruling pertained to the audio statements as well as the written statements. And for the reason I gave in my findings of the fact [sic] this morning, that applies to the audio. The audio will be permitted to be introduced. However, I am going to instruct the State to redact any portion of the audio that concerns the polygraph examination. That would be inadmissible.

## 2. Additional Suppression Hearing Evidence

Detective Savage testified that he had arranged for Brown to take a polygraph exam on April 21 with Wood's Polygraph, a company that the Arlington

---

[9]The audiotape of the March 24 conversation does not contain an express statement by Detective Savage to Brown that he was free to leave.

Police Department used on a regular basis. He said that he did not observe the polygraph exam but that after Bobby Jones, the polygrapher, told him the results, he told Jones that he would like to talk to Brown. Detective Savage and Brown then talked in the polygraph company's conference room, and he recorded their conversation. Detective Savage did not recall Brown's trying to talk with him about what Brown and Jones had discussed.[10]

Brown agreed to give Detective Savage another statement. Brown gave his second statement on another form with pre-printed *Miranda* warnings, and Detective Savage asked him to read the warnings to himself and indicate whether he understood them. Brown indicated that he understood them by initialing next to them. Detective Savage said that he had made it clear to Brown that getting Brown help and probation were out of his hands and that he did not promise Brown anything for his statement. Their discussion about bond issues occurred after Brown gave his statement. Detective Savage obtained an arrest warrant for Brown on May 20, 2008.

Jones, the polygrapher from Wood & Associates Polygraph Services, testified that his company was an independent contractor and had a contract with the Arlington Police Department. Jones said that at the end of the test, he told Brown that he had failed and suggested to him that he "come clean." The following dialogue then occurred between Jones and defense counsel:

_____

[10]Brown never expressly stated anything about Jones during the recorded April 21 conversation.

Q. And you suggested to him that he come clean?

A. Yes, ma'am.

Q. And in the process of that, you-all talked about that if he would go ahead and come clean, you gave him examples of people who got better situations, probation, help, counseling for just going ahead and telling the truth?

A. We discussed that, yes, ma'am.

Q. You not only discussed it, sir, but it came from you, these scenarios and these examples, that you knew of personally where some people regretted not coming clean versus others who had a slightly better deal from coming clean?

A. No, ma'am. The context I put it in—he was obviously very guilt-ridden. I talked to him about many people I see in this situation get probation. And that's the truth, that I couldn't promise him anything at all. I wasn't in a position to do that, but he was carrying a big burden on his shoulders that he had to get off his shoulders. And I gave him the example that people who are open and honest get that burden off their shoulders, that if he makes it hard on other people, they make it hard on him in return. That's a human trait that we all have. I talked to him in those regards.

Jones also said that in conducting his interview with Brown, he never promised Brown anything and told Brown that he could not promise him anything and that he did not make any promises or inducements to obtain Brown's statement. Jones testified that Brown was free to leave and to terminate the interview at any time, that Brown knew this, and that Brown never terminated the interview. Jones stated that he was not a member of the Arlington Police Department and that he did not take a written statement or record Brown's statement.

14

The trial court reviewed the audiotape containing Detective Savage and Brown's March 24 and April 21 conversations prior to issuing its ruling, and these conversations were subsequently played for the jury.

The April 21 recording reflects that Detective Savage told Brown that he was not under arrest, that he was not going to arrest Brown that day, and that Brown was going to leave just like he came. He acknowledged that Brown had been very cooperative. Brown told Detective Savage that he and M.W. had two encounters in a park in Arlington, where he touched M.W.'s breast and female sexual organ with his hand on two occasions and M.W. touched his penis on one occasion.

Brown said that he admitted his "wrong" and that he needed to accept responsibility and "to get some help about that." Detective Savage told Brown, "We can do that, you're doing the right thing, you know, being honest." Brown then said,

> And I appreciate the way you've been helping me. You know, I really do, you know, you been honest with me, you know, you been gentle, more or less, you know, and I really appreciate it. That's why, even in the beginning, when you confronted me, I didn't try to just deny everything.

Brown then told Detective Savage his hope that he could admit "to this," put in a guilty plea, and get probation.

Detective Savage told Brown that those decisions were up to the district attorney and the court, Brown acknowledged that he knew this, and then the detective asked Brown to give him a written statement of what they had just

15

talked about. Detective Savage showed Brown the top part of the form that set out his *Miranda* rights, asked him to read through them, and told him that if he had any questions at all, just to ask. While Brown wrote out his statement, Detective Savage told him that if he wanted to ask for counseling, to put that in the statement.

Detective Savage asked Brown whether he had any questions. Brown asked him what would happen next, and Detective Savage told him that he would present the case to the district attorney, that there would probably be an arrest warrant issued for Brown's arrest, and that Brown would have to go through "the process" and make bail. Detective Savage told Brown that when he had the warrant signed by the judge, he would tell the judge that Brown had been cooperative, so the judge could take that into consideration when issuing his bond. He explained to Brown what a bond was.[11]

---

[11]Detective Savage's trial testimony was substantially similar to his testimony during the suppression hearing and to the audiotaped conversations. He said that he interviewed Brown on April 21 and told Brown before the interview that "he was not under arrest and that he could leave just the way he came." Brown was not under arrest, was not handcuffed, and was not detained in any way during the interview, and he gave his written statement on a form pre-printed with *Miranda* warnings.

Brown asked Detective Savage what would happen after he left, and Detective Savage explained the bond procedure to him. Brown said that he needed to get some help and Detective Savage admitted that he responded, "We can do that," but he also said that he had told Brown that in the context of Brown putting his desire for counseling into his written statement and not as a promise that Brown would receive counseling or that he would receive it as a result of his written statement. Brown left after the interview. Detective Savage reported to the judge that Brown had been cooperative so that the judge could set an appropriate bond based on all of the facts and circumstances.

16

### 3. Analysis

In the second part of his first issue, Brown claims that he made his confession due to threats and a false promise of leniency by the polygrapher.

A statement may be used in evidence against an accused if it appears that the statement was "freely and voluntarily made without compulsion or persuasion." Tex. Code Crim. Proc. Ann. art. 38.21 (West 2005). For a promise to render a confession invalid, it must be positive, made or sanctioned by someone in authority, and of such an influential nature that it would cause a defendant to speak untruthfully. *Martinez v. State*, 127 S.W.3d 792, 794 (Tex. Crim. App. 2004). "Before a promise will render a confession inadmissible, it must be shown that the promise induced the confession." *Muniz v. State*, 851 S.W.2d 238, 254 (Tex. Crim. App.) (noting that general statements made to a suspect that a confession may sometimes result in leniency do not render a confession involuntary because this is a statement of fact, not a promise in exchange for a confession), *cert. denied*, 510 U.S. 837 (1993). Further, a confession given "under the duress of hallucinations, illness, medications, or even a private threat" can be involuntary under articles 38.21 and 38.22, and the inquiries do not turn solely on police overreaching. *Oursbourn v. State*, 259 S.W.3d 159, 172 (Tex. Crim. App. 2008).

The record supports the trial court's findings that Jones was not an employee or agent of the Arlington Police Department and that Jones did not make his statement that Brown should "come clean" at the police department's

17

urging. Further, there is no evidence that Jones or Detective Savage threatened Brown or promised Brown anything for his confession or that Brown felt threatened and made his confession in response to threats or promises. To the contrary, Brown even thanked Detective Savage for being "gentle" with him. Therefore, we overrule the remainder of Brown's first issue.

## IV. Sufficiency

In his second issue, Brown complains that the State failed to prove that M.W. was not his spouse.

### A. Standard of Review

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Isassi*, 330 S.W.3d at 638. The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Isassi*, 330 S.W.3d at 638; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

18

## B. Analysis

At the time of the offense, to prove indecency with a child, the State had to show that the accused engaged in sexual contact with a child or caused a child to engage in sexual contact, that the child was younger than seventeen years, and that the child was not the accused's spouse. *See* Act of May 23, 2001, 77th Leg., R.S., ch. 739, § 2, 2001 Tex. Gen Laws 1463, 1463 (amended 2009) (current version at Tex. Penal Code Ann. § 21.11 (West 2011)). A "spouse" is a person to whom a person is legally married under the family code. Tex. Penal Code Ann. § 21.01(4) (West 2011). Direct evidence that the complainant was not the defendant's spouse is not required. *Strahan v. State*, 306 S.W.3d 342, 348 (Tex. App.—Fort Worth 2010, pet. ref'd) (stating that it may be proved by circumstantial evidence that the victim was not the defendant's spouse).

Here, M.W. testified that she was five years old when Brown began babysitting her and touching her in her "private areas." R.W. said that Brown had been dating and living with M.W.'s grandmother L.L. as L.L.'s boyfriend and that Brown was a grandfather figure to M.W. At the beginning of her seventh grade year, M.W. moved to Arlington, Texas, and Brown followed. M.W. said that Brown moved with L.L. into the same apartment complex where M.W. lived.

Although Brown denied that he and M.W.'s grandmother had ever been lovers during the April 21 conversation with Detective Savage, the evidence also revealed that L.L. had broken up with Brown after M.W.'s parents took M.W.'s cell phone, found a compromising text from Brown, and confronted M.W. about it.

On the March 24 audiotape, Brown clearly stated to Detective Savage that he was not M.W.'s "boyfriend" but said that they had a close relationship and that he had raised her. *See id.* (holding circumstantial evidence was sufficient to establish that complainant was not the defendant's spouse when she was approximately ten years old when the sexual abuse began and referred to the defendant as her father); *Martin v. State*, 819 S.W.2d 552, 556 (Tex. App.—San Antonio 1991, no pet.) (holding circumstantial evidence was sufficient to establish that complainant was not the defendant's spouse when the complainant was between the ages of six and nine when the offense took place); *Meyers v. State*, 737 S.W.2d 6, 8 (Tex. App.—Corpus Christi 1987, no pet.) (holding circumstantial evidence was sufficient to establish that complainant was not the defendant's spouse when he had asked the victim's mother to marry him, had two children with the victim's mother, and was considered by the victim's relatives to be the victim's stepfather); *see also Salinas v. State*, No. 13-99-00226-CR, 2000 WL 34252060, at *2 (Tex. App.—Corpus Christi 2000, no pet.) (not designated for publication) (stating that the circumstantial evidence was sufficient to make it legally impossible for complainant to be the defendant's spouse when the evidence established that she was five years old when the sexual assault occurred and the defendant testified that he was her father). Viewing the evidence in the light most favorable to the jury's verdict, we conclude that the evidence is sufficient to support the jury's finding that M.W. was not Brown's spouse, and we overrule his second issue.

20

## V. Ineffective Assistance of Counsel

In his third issue, Brown contends that he received ineffective assistance of counsel because his counsel (1) waited until five days before trial to file her "boilerplate discovery motions" that made no request for evidence of extraneous offenses that might be introduced by the State during the guilt-innocence or punishment phases of trial,[12] (2) failed to file a motion in limine to bar the State from having M.W. testify about those offenses, (3) failed to object to the extraneous offenses when they came in, and (4) failed to suppress the seizure of his cell phone.

### A. Standard of Review

To establish ineffective assistance of counsel, the appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Davis v. State*, 278 S.W.3d 346, 352 (Tex. Crim. App. 2009).

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). The issue is whether counsel's assistance was reasonable under all the circumstances and

---

[12]The State introduced no additional evidence during the punishment phase of Brown's trial.

21

prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065. Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation. *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001). A reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim. *Salinas*, 163 S.W.3d at 740; *Thompson*, 9 S.W.3d at 813–14. "In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions." *Salinas*, 163 S.W.3d at 740 (quoting *Mallett*, 65 S.W.3d at 63). To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Id.* (quoting *Thompson*, 9 S.W.3d at 813). It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record. *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

The second prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, i.e., a trial with a reliable result. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. In other words, appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.*

22

at 694, 104 S. Ct. at 2068.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  *Id.*  The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding in which the result is being challenged.  *Id.* at 697, 104 S. Ct. at 2070.

## B.  Analysis

Under section 2 of article 38.37 of the code of criminal procedure, evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of an alleged sexual offense shall be admitted for its bearing on relevant matters, including the state of mind of the defendant and child and the previous and subsequent relationship between the defendant and child.  Tex. Code Crim. Proc. Ann. art. 38.37, § 2 (West 2005 & Supp. 2011).  Under section 3 of the same article, on timely request by the defendant, the State shall give notice of its intent to introduce this evidence in its case-in-chief.  *Id.* art. 38.37, § 3.

As argued by Brown, his trial counsel filed her motion for discovery on October 5, 2010, the day trial began.  Brown complains, "It is difficult to ascertain why trial counsel would not have requested 'extraneous offenses' in her discovery and filed the requisite motion in limine."[13]  However, at the conclusion of the suppression hearing, Brown's counsel put the following on the record:

---

[13]In her motion, counsel asked the court to order the State to produce its list of witnesses, as well as the list of statements made by Brown to the State in connection with the case; the State's warrants and affidavits obtained to search Brown's property or person or to arrest Brown and any written waiver alleged by

23

[Defense counsel]:  Okay.  Also, I explained to you some time ago that one of the blessings we have in practicing in Tarrant County, is we have what is called an open-file policy.  And I explained to you that I'm able to get the police report, *I'm able to get any information that the district attorneys have and don't automatically have to file a motion to get that like some other counties*.

Remember, I told you I have everything?  In fact, we talked in my office with me having those materials, going over that information with you on more than one occasion.

[Brown]:  Yes, ma'am.

[Defense counsel]: Now, on today, though, I wanted to be cautious, and I did file a motion for discovery, which basically asked them for everything I already have; do you understand that?

[Brown]:  Yes, ma'am.

[Defense counsel]:  The only thing that I needed from the State, which they provided that to me, was the witnesses.  And they went even further by telling me which ones they anticipate specifically to call today; do you understand that?

[Brown]:  Yes, ma'am.

[Defense counsel]:  They could have given me a list of ten or twelve people, but they basically gave me the three or four they may call; do you understand?

[Brown]:  Yes, ma'am.  [Emphasis added.]

Although Brown speculates that his trial counsel was unaware of the

extraneous offenses—specifically M.W.'s testimony that Brown had been

_____

the State to have been signed by Brown involving his right to counsel, right to remain silent, or right to be free from search and seizure; any photographic, physical, or scientific evidence in the case; any evidence pertaining to Brown's competency to stand trial, rule 404(a)(2) evidence of the alleged victim's character traits; and exculpatory evidence.

24

touching her sexually since she was five years old—and argues that trial counsel's failure to file the motion was "an inexplicable abdication of her duty to thoroughly investigate the case," we cannot say that the record here affirmatively demonstrates the alleged ineffectiveness. *See Salinas*, 163 S.W.3d at 740.

Further, with regard to trial counsel's failure to file a motion in limine regarding the extraneous offenses and her failure to object to them during trial, to establish that counsel was ineffective for either failing to file a motion or for failing to object, the appellant must first show that the motion would have been granted or that the trial court would have committed error by overruling the objection. *See Ex parte White*, 160 S.W.3d 46, 53 (Tex. Crim. App. 2004) ("To show ineffective assistance of counsel for the failure to object during trial, the applicant must show that the trial judge would have committed error in overruling the objection."); *Roberson v. State*, 852 S.W.2d 508, 511 (Tex. Crim. App. 1993) (stating that ineffective assistance of counsel is not shown when there is no showing that a ruling on any of the pretrial motions would have changed anything in the case); *see also Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998) (stating that to satisfy *Strickland* when counsel failed to file a motion to suppress, appellant was obliged to show that the motion would have been granted); *Muniz v. State*, 851 S.W.2d 238, 258 (Tex. Crim. App.) (stating that the failure to object to admissible evidence is not ineffective assistance of counsel), *cert. denied*, 510 U.S. 837 (1993).

Because the record reflects that Tarrant County has an open-file policy—giving defense counsel access to all of the evidence of which the State was aware—and because under article 38.37, section 2 of the code of criminal procedure, the extraneous offenses were admissible, Brown cannot show that his defense counsel's failure to file a motion in limine with regard to the extraneous offenses constituted ineffective assistance. And because the record is silent as to counsel's reason for failing to object and because Brown has not shown that the trial court would have erred by overruling an objection to the extraneous offense evidence, Brown has failed to rebut the presumption that his trial counsel acted reasonably. *See Thompson*, 9 S.W.3d at 814.

Finally, although Brown argues that trial counsel was ineffective in failing to suppress the seizure of his cell phones, Detective Savage testified at the suppression hearing that no text messages were recovered from Brown's cell phones. Further, even assuming that Brown's confessions stemmed from an unlawful cell phone seizure, the jury could have reached the same conclusion that it did without considering Brown's confessions. That is, the jury could have chosen to believe M.W.'s testimony about the indecent touching and R.W.'s testimony about the text messages that resulted in Brown's appearance at M.W.'s school. And it could have chosen to believe Detective Savage's testimony that Brown had a phone in his hand when he approached Brown's truck at the school on March 24—as had been arranged via text message with R.W. pretending to be M.W.—and Brown's audiotaped statement on March 24,

26

prior to Detective Savage's taking his cell phone, that Brown was at the school to talk to M.W., to confirm the portions of M.W.'s testimony that it found credible and thereby convict Brown of the two counts of indecency.[14]  *See, e.g., Bazanes v. State*, 310 S.W.3d 32, 40 (Tex. App.—Fort Worth 2010, pet. ref'd) (stating that a complainant's testimony alone is sufficient to support a conviction for indecency with a child).  Therefore, Brown has failed to show that there is a reasonable probability that, but for counsel's alleged unprofessional error, the result of the proceeding would have been different.  *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.  We overrule Brown's third issue.

## VI. Conclusion

Having overruled all of Brown's issues, we affirm the trial court's judgment.


PER CURIAM


PANEL:  MCCOY, J.; LIVINGSTON, C.J.; and GABRIEL, J.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  February 2, 2012

---

[14]The audiotape of the March 24 conversation reflects that Detective Savage approached the vehicle, greeted Brown by his first name, introduced himself as a detective with the Arlington Police Department, and told Brown that he needed to talk with him.  Brown replied, "Alright."  Detective Savage asked Brown what he was "doing up here today."  Brown replied that he was there to talk to M.W.